UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SENIQUA JAMISON,

    Plaintiff,

v.                                      Case No. 1:17-CV-559

CHILD PROTECTIVE SERVICES (CPS),    HON. GORDON J. QUIST
et al.,

    Defendants.
_____/

## OPINION

Plaintiff, Seniqua Jamison, proceeding pro se, has sued Defendants, Michigan Department of Health and Human Services (MDHHS) (identified as Child Protective Services (CPS)) and three MDHHS employees, Julianne Weick, Stesha Miller-Jones, and Shalyn Lowe (collectively MDHHS Defendants); Lutheran Social Services of Michigan n/k/a Samaritas; and Judith Raskiewicz, alleging a number of claims arising out of the removal of her three oldest children by CPS and termination of her parental rights as to those children, as well as events that occurred after the removal. Jamison's claims include: (1) unlawful CPS petition for removal; (2) unlawful ex parte order; (3) unlawful jurisdiction; (4) unlawful seizure; (5) unlawful placement in foster care; (6) abuse in licensed foster care; (7) unlawful case service plan; (8) violation of reasonable efforts statutes; (9) violation of child best interest status (sic); (10) unlawful coercion waiver of rights amended petition; (11) defense attorney ineffective; (12) unlawful termination of parental rights; (13) CPS conceals false witnesses; and (14) unlawful placement on the central registry.

The MDHHS Defendants have filed a motion to dismiss Jamison's claims on various grounds. In addition, Samaritas has filed a motion to dismiss. Jamison has filed a response, which is not particularly responsive to Defendants' arguments.

For the following reasons, the Court will grant Defendants' motions. In addition, although Defendant Raskiewicz—Jamison's attorney in the removal proceedings—has not filed a motion to dismiss, because Jamison is proceeding in forma pauperis, and his complaint fails to state a claim. 28 U.S.C. § 1915(e)(2); *see also Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999) (holding that "§ 1915(e)(2) applies only to in forma pauperis proceedings").

## I. BACKGROUND

The following facts are based on Jamison's allegations in her pro se complaint. On July 1, 2014, Jamison's parental rights with regard to her three oldest children were terminated pursuant to an order issued by Kent County Family Court Judge Patrick Hillary. (ECF No. 1 at PageID.10, 27.) Jamison alleges that there was insufficient evidence to support the removal order and that the petition submitted by Defendant Weick in support of the removal order falsely alleged that the children were in immediate danger. (*Id.* at PageID.10–11, 24–25.) Jamison waived her parental rights over the children. (*Id.* at PageID.38.) Pursuant to Michigan law, Jamison was ordered to participate in a Parent Agency Case Service Plan, administered by Samaritas. (*Id.* at PageID.32–33.) Samaritas recommended that Jamison's parental rights be terminated because she failed to complete the program. (*Id.* at PageID.33–34; ECF No. 19-2 (termination report).)

On or about June 30, 2016, Jamison gave birth to a fourth child, whom she conceived with a man named "Mr. Merriweather." (*Id.* at PageID.12–13.) Because of the prior order terminating Jamison's parental rights, the fourth child was immediately removed from Jamison's care. (*Id.* at PageID.12.) Jamison was referred to a Family Reunification Program (FRP). Jamison participated in the program, and on February 23, 2017, the newborn was returned to Jamison. (*Id.* at PageID.12.)

On April 25, 2017, CPS agents Defendants Miller-Jones and Lowe went to Jamison's residence to investigate an anonymous tip that Jamison and Merriweather were "using drugs, alcohol, driving while under the influence with their Child in the car, that there was no food in the

house and the Child was being neglected." (*Id.* at PageID.13.) Defendants arrived at Jamison's residence while MDHHS reunification specialists were present. Defendants demanded access to the home, and Jamison consented to Lowe's entry because Lowe threatened to get a removal order for the newborn if Jamison did not consent. (*Id.* at PageID.16.) The case was closed on May 18, 2017, after a hearing in which the court found Jamison and Merriweather fit parents. (*Id.* at PageID. 19.) Jamison alleges that, in spite of the court's finding, Defendant Lowe continued her investigation by, among other things, interviewing Merriweather's eleven-year-old son at his school. (*Id.* at PageID.19–20.)

Jamison alleges that she is pregnant again but does not have an open case with an unidentified safety threat to her unborn child. However, at a checkup, the social worker who works at the clinic informed Jamison that CPS guidelines required her to report Jamison's pregnancy to CPS. The social worker also informed Jamison that there was a possibility that CPS could take Jamison's unborn child because of the prior termination of Jamison's parental rights. (*Id.* at PageID.21.)

## II. MOTION STANDARD

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

### III. DISCUSSION

**A.     MDHHS Defendants' Motion**

**1.     The Eleventh Amendment bars Jamison's claims against MDHHS.**

Jamison does not make any allegation or assert any claim directly against MDHHS, nor does she request any relief against MDHHS. Regardless, the Eleventh Amendment bars Jamison from asserting any claim against MDHHS in this Court. "It is a fundamental principle of our federalism that the Eleventh Amendment bars suit against a state or one of its agencies in federal court without its consent." *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 442 (6th Cir. 2006). This is true regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1964). Because a suit against MDHHS, an agency of the State of Michigan, is a suit against the State of Michigan and Michigan has not waived its Eleventh Amendment immunity, *see Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994), Jamison's claims against MDHHS must be dismissed. *See Harnden v. Mich. Dep't of Health & Human Servs.*, No. 16-cv-13906, 2017 WL 3224969, at *3–4 (E.D. Mich. July 31, 2017) (dismissing the plaintiff's claims against MDHHS as barred by the Eleventh Amendment). In addition, to the extent Jamison sues any MDHHS employee in her official capacity, the suit is likewise barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101–02, 104 S. Ct. at 908; *see also Crabbs v. Scott*, 786 F.3d 426, 429

(6th Cir. 2015) ("Damages actions against state officers in their official capacities count as lawsuits against the State." (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105 (1985))).

2.       **This Court lacks jurisdiction to review the state court's order.**

Several of Jamison's claims challenge or seek review of Judge Hillary's order. For example claims 2, 3, 7–9, and 12 allege that the ex-parte removal order was unlawful, that Judge Hillary lacked jurisdiction to enter the order, and that the order unlawfully required Jamison to participate in a Case Service Plan, violated the reasonable efforts and best interest statutes, and unlawfully terminated Jamison's parental rights.

The *Rooker-Feldman* doctrine has its roots in the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and provides that lower federal courts are without authority to review final judgments of state courts in judicial proceedings. This is because "only the Supreme Court of the United States has the jurisdiction to review state court decisions." *Coleman v. Governor of Mich.*, 413 F. App'x 866, 870 (6th Cir. 2011) (citing *Rooker*, 263 U.S. at 416, 44 S. Ct. at 150)); *see also Givens v. Homecomings Fin.*, 278 F. App'x 607, 608–09 (6th Cir. 2008). The Supreme Court has clarified the scope of the doctrine, confining it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). In light of *Exxon Mobile*, the Sixth Circuit "distinguishe[s] between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*,

5

606 F.3d 301, 309 (6th Cir. 2010). For purposes of determining the doctrine's application, the Sixth Circuit has explained that the proper focus is the source of the plaintiff's claimed injury:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

In the instant case, the *Rooker-Feldman* doctrine bars many, if not most, of Jamison's claims because she requests review of, and alleges injury resulting from, the state-court order. *See Hallman v. Dep't of Human Serv.*, No. 11-6744, 2013 WL 12182022, at *2 (E.D. Pa. July 26, 2013) (noting that the plaintiff's claim that the termination of parental rights was not supported by clear and convincing evidence implicated *Rooker-Feldman* concerns). Accordingly, the Court lacks jurisdiction to review the claims identified above, as well as any other claim alleging injury arising from the state-court order.

**3.   The doctrine of collateral estoppel bars Jamison from relitigating the facts of the abuse/neglect proceeding.**

In several of her claims, Jamison asserts that Judge Hillary's factual determinations were incorrect or that he ignored evidence tending to show that there was no basis to remove the children from Jamison's care. "The Full Faith and Credit Act mandates that 'judicial proceedings . . . shall have the same full faith and credit in any court with the United States . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 310 (6th Cir. 2005) (quoting 28 U.S.C. § 1738). Therefore, Judge Hillary's order has the same preclusive effect it would have under Michigan law. *Id.* (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984)).

In Michigan, issue preclusion is also known as collateral estoppel. *People v. Gates*, 434 Mich. 146, 154 n.7, 452 N.W.2d 627, 630 n.7 (1990). Under Michigan law, collateral estoppel has three elements: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3, 429 N.W.2d 169, 171 n.3 (1988). An issue is "actually litigated" if the party opposing estoppel "had a full and fair opportunity to litigate the issue." *Gates*, 434 Mich. at 156–57, 452 N.W.2d at 631. Mutuality of estoppel is not required where a party seeks to use collateral estoppel "defensively against a party who has already had a full and fair opportunity to litigate the issue." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 695, 677 N.W.2d 843, 852 (2004). All of these elements are satisfied in this case. First, whether Jamison was neglecting/abusing her children was the central issue in the state-court proceedings. Second, although Jamison waived her parental rights, it appears that Jamison had an opportunity to litigate the issue. Finally, regardless of mutuality, Defendants are entitled to use the state-court's findings defensively. Accordingly, Jamison is collaterally-estopped from relitigating the factual underpinnings of the state-court order.

4. **Defendant Weick is entitled to absolute immunity as to Count 1 and qualified immunity as to Jamison's other claims.**

In Count 1, Jamison alleges that Defendant Weick submitted a petition in support of the court order that was legally insufficient and contained information that Weick knew was false. Defendant Weick is entitled to absolute immunity for such a claim. Social workers are absolutely immune from liability when they act as "legal advocates" in initiating and pursuing child neglect/abuse proceedings. *See Holloway v. Brush*, 220 F.3d 767, 774–75 (6th Cir. 2000). "The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct 'intimately associated with the judicial phase of the criminal process.'" *Pittman v. Cuyahoga Cnty.*

7

*Dep't of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 995 (1976)) (internal citation omitted). This immunity applies even if Weick made intentional misrepresentations to the state court. *Id.* at 725. Weick was acting as a "legal advocate" in preparing and submitting the petition, and is therefore absolutely immune on the claim in Count I.

To the extent Jamison alleges that Weick is liable for obtaining an unlawful ex parte order to remove the three children, unlawful placement of the children in foster care, unlawful imposition of a Case Service Plan, and violating reasonable efforts and best interests statutes, Weick is entitled to qualified immunity. In *Pittman*, the Sixth Circuit held that the defendant social worker was entitled to qualified immunity on the plaintiff's substantive and procedural due process claims because, pursuant to Ohio law, the juvenile court had "the ultimate decisionmaking power with respect to placement and custody, [and] it alone could deprive [the plaintiff of his fundamental right [to family integrity]." 640 F.3d at 729. The same is true under Michigan law, which leaves many of the decisions in the hands of the family court. *See* M.C.L. §§ 712A.18f, 712A.19b.

In Count 4, Jamison alleges that unidentified "[s]ocial workers and [p]olice officers unlawfully seized Ms. Jamison's [c]hildren." (ECF No. 1 at PageID.28.) However, Jamison admits that such seizure was pursuant to a court order. Under such circumstances, there is no constitutional violation. *Kranz v. City of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006). Accordingly, Weick is entitled to qualified immunity to the extent this claim is asserted against her.

In Count 3, Jamison alleges that CPS concealed the identity of a reporting witness whose report that Jamison was living in a storage unit with her newborn daughter prompted an investigation that eventually led to the termination of Jamison's parental rights. Again, Jamison does not allege this claim against a specific Defendant, but assuming that it is against Defendant Weick, Weick is entitled to qualified immunity. Pursuant to M.C.L. § 722.625, "the identity of a

8

reporting person is confidential subject to disclosure only with the consent of that person or by judicial process." The United States Supreme Court has instructed courts that they may consider the two prongs of the qualified immunity analysis in any order, and need not consider both. *Pearson v. Callahan*, 555 U.S. 223, 236–38, 129 S. Ct. 808, 818–19 (2009). Here, Jamison's claim fails on the "clearly established" prong. That is, Jamison cites no case that clearly establishes that maintaining the identity of a reporting person violates a constitutional right, and this Court is unaware of such authority.

Finally, in Count 14, Jamison alleges a claim for improperly adding Jamison's name to Michigan's Central Registry. The Court concludes that qualified immunity bars this claim as well. In *Ballard v. Johnson*, No. 15-11039, 2017 WL 1151166 (E.D. Mich. Mar. 28, 2017), the court concluded that the defendants were entitled to qualified immunity as to the plaintiff's claim that the defendants violated the plaintiff's constitutional rights by placing her on the Central Registry because the defendants "had a reasonable objective basis to conclude that child abuse or neglect occurred." *Id.* at *7 (citing *Vermeesch v. Hall*, No. 98-74093, 2000 WL 654953, at *7 (E.D. Mich. Apr. 24, 2000)). The information supporting that basis included a report by the Foster Care Review Board detailing incidents of corporal punishment by a babysitter and repeated allegations of mistreatment. *Id.* The court further noted that the plaintiff failed to cite controlling federal law that would have put the defendants on notice that they were violating the plaintiff's rights by placing her on the Central Registry. *Id.* at *8. Here, the court order terminating Jamison's parental rights provided the MDHHS Defendants an objectively reasonable basis to conclude that Jamison engaged in child abuse or neglect and that listing her on the Central Registry was appropriate. Accordingly, the MDHHS Defendants are entitled to qualified immunity on this claim as well.

### 5. Jamison lacks standing to assert claims that belong to her children

In Count 6, Jamison alleges that her children were abused while in foster care. The proper

9

plaintiff in an action under § 1983 is "'the party injured'" by the alleged violation. *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) (quoting § 1983). Thus, a § 1983 action is "*personal* to the injured party." *Id.* (italics in original). Here, Jamison's children are the injured parties. Accordingly, Jamison cannot assert claims that belong to her children. Moreover, as a pro se litigant, Jamison cannot represent others, including her children. *See Ketzner v. Williams*, No. 4:06-CV-73, 2008 WL 4534020, at *15 (W.D. Mich. Sept. 30, 2008) ("*Pro se* litigants may not represent others. Each plaintiff is limited to asserting his own individual claims." (citing 28 U.S.C. § 1654)).[1]

**B.      Samaritas's Motion**

Samaritas's primary argument in its motion is that Jamison fails to allege, as required by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), that a policy or custom of Samaritas violated Jamison's constitutional rights. Samaritas is correct that the complaint does not allege a policy, practice, or custom. However, in the Court's judgment, Jamison's claims against Samaritas fail for an additional, more fundamental, reason: Samaritas is not a state actor. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55 (1988). Jamison alleges that Samaritas was a "Private Foster Care Contracting Agency." (ECF No. 1 at PageID.32.) In order for a private party to be held liable for a constitutional violation, its actions must "so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing, among others, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999)). Jamison cites no case, nor offers any argument, that Samaritas's evaluation of Jamison's compliance with the Case Service Plan,

---

[1] The MDHHS Defendants also argue that Jamison may not assert a claim on behalf of Merriweather's eleven-year-old child. The Court does not read Jamison's complaint as alleging such a claim. To the extent Jamison seeks to assert such a claim, she would be precluded from doing so for the reasons explained above.

constitutes state action. Judges in the Eastern District of Michigan have concluded that private entities providing similar services were not state actors under any of the three tests the Sixth Circuit recognizes: (1) the public function test; (2) the state compulsion test; and (3) the nexus test. *See Brent v. Wayne Cnty. Dep't of Human Servs.*, No. 11-10724, 2012 WL 12877988, at *11–13 (E.D. Mich. Nov. 15, 2012), *aff'd in part, rev'd in part, and remanded sub nom. Brent v. Wenk*, 555 F. App'x 519 (6th Cir. 2014); *Molnar v. Care House*, 574 F. Supp. 2d 772, 782–85 (E.D. Mich. 2008). The Court finds the reasoning in these cases persuasive and applicable to Samaritas.

Accordingly, for the foregoing reasons, Jamison's claims against Samaritas will be dismissed.

## C. Jamison's claims against Defendant Raskiewicz lack merit

In Count 11, Jamison alleges that her court-appointed attorney, Defendant Raskiewicz, was ineffective, in violation of Jamison's right to the effective assistance of counsel. Jamison's claims against Defendant Raskiewicz fail for two independent reasons. First, defense counsel, whether court-appointed or retained, do not act under color of law. *Welch v. Dobias*, No. 2:17-CV-38, 2017 WL 1905869, at *2–3 (W.D. Mich. May 10, 2017) (citing *Beasley v. Poole*, No. 1:11-cv-63, 2011 WL 2689347, at *7–8 (E.D. Tenn. July 11, 2011)); *see also Zurla v. Thomas*, No. 92-5993, 1993 WL 393325, at *1 (6th Cir. Oct. 5, 1993) ("It is well-settled that a public defender or a court-appointed defense counsel, while acting in that capacity, is not a state actor for purpose of § 1983." (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 321, 102 S. Ct. 445, 451 (1981))). Second, even if Defendant Raskiewicz were a state actor, Jamison's ineffective assistance of counsel claim would fail. As one court has observed, "[t]he federal courts have not found the Sixth Amendment's guarantee of the effective assistance of counsel to be applicable to proceedings involving the termination of parental rights." *O'Neal v. Sherman*, No. EDCV 14-2004-DDP (MAN), 2014 WL 5810308, at *3 (C.D. Cal. Nov. 6, 2014) (citing *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 23–32, 101 S. Ct. 2153,

2157–2162 (1981)); *see also Glover v. Johnson*, 75 F.3d 264, 269 (6th Cir. 1996) (noting that there is no constitutional right to legal assistance in parental rights matters).

Accordingly, Jamison's claims against Defendant Raskiewicz will be dismissed as well.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the MDHHS Defendants' motion to dismiss and Samaritas's motion to dismiss. The Court will also dismiss Jamison's claims against Defendant Raskiewicz pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim.

A separate order will enter.


Dated: October 10, 2017                             /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE